[Civil No. 573.    Filed February 23, 1898.]

[52 Pac. 353.]

JOHN T. DENNIS et al., Defendants and Appellants, v. UNITED STATES OF AMERICA, Plaintiff and Appellee.

1. EVIDENCE—UNITED STATES TREASURY TRANSCRIPT—REV. STATS. U. S., SEC. 886, CONSTRUED—UNITED STATES v. ELLIS, 2 ARIZ. 253, AND UNITED STATES v. DRACHMAN, 4 ARIZ. 297, FOLLOWED.—A transcript, duly certified as provided by section 886, *supra,* showing the transaction connected with the bid of Drachman, his failure to comply with the terms of his proposal, the subsequent purchases by the quartermaster's department of hay, and the amounts paid for the same, and containing copies of Drachman's bid, the bond sued upon, and the correspondence between the chief quartermaster and Drachman relating thereto, is properly admitted in evidence in a suit by the United States against Drachman's bondsman to recover damages for his failure to comply with his bid. *United States* v. *Ellis,* and *United States* v. *Drachman, supra,* followed.

2. SAME—SAME—SAME—PRIMA FACIE CASE—SUPPLEMENTAL PROOF.— A treasury transcript, certified under section 886, *supra,* providing, "and the court trying the cause shall be authorized to grant judgment and award execution accordingly," is not to be construed as authorizing judgment in favor of the government unless such transcript in itself makes a *prima facie* case which is not overcome by defendant's evidence. If such transcript fails to make such *prima facie* case, it must be supplemented by such competent evidence as will entitle the government to a recovery under the well-settled rules of law governing the action.

3. BOND—CONTRACT—SALES—BREACH—MEASURE OF DAMAGES—FAILURE TO SUPPLY ARTICLE CONTRACTED TO BE FURNISHED—SUBSTITUTED ARTICLE — EVIDENCE — NECESSITY FOR PROOF THAT ARTICLE CONTRACTED FOR COULD NOT BE OBTAINED.—Where the treasury transcript shows a proposal to supply gramma hay at a certain price and a failure so to do and purchases by the government of other kinds of hay at various prices, the government cannot recover, in an action against a surety upon the bond to secure the performance of such proposal providing for the payment to the United States of the difference in money between the amount of the bid of said bidder and the amount for which the proper officer of the United States may contract with another to furnish "said supplies," the difference between the proposal and the price actually paid for other kinds of hay, without first proving that grama hay of suitable quality and quantity was not obtainable in the market at the time.

4. SAME — SAME — SAME — SAME — SAME—EVIDENCE—ADMISSIBILITY—
PROOF THAT ARTICLE COULD BE OBTAINED IN OPEN MARKET.—In an
action on a bond conditioned to pay the difference between the price
at which a certain article was proposed to be furnished and the
price at which such article could be purchased from another, where
the evidence of plaintiff shows the purchase of a substituted article,
it is error to exclude evidence that the article contracted to be
supplied could have been purchased in the open market at the time
and place it was contracted to be delivered.

APPEAL from a judgment of the District Court of the
First Judicial District in and for the County of Pima. Joseph
D. Bethune, Judge. Reversed.

The facts are stated in the opinion.

C. M. Frazier, for Appellants.

E. E. Ellinwood, United States District Attorney, for Appellee.

SLOAN, J.—This is a suit brought by the United States
against Phillip Drachman, H. Goldberg, and John T. Dennis
to recover the sum of $5,988.16 damages alleged to have accrued to appellee upon the breach of a bond given by said
Phillip Drachman as principal and said H. Goldberg and
John T. Dennis as sureties to secure the faithful performance
by said Drachman of his written proposal to supply the government at Fort Huachuca with 1,800,000 pounds of grama
hay. Drachman and Goldberg having died before trial, the
case was proceeded with against appellant Dennis. The
cause was tried before a jury, and a verdict rendered for
$3,556 against appellant, and judgment entered thereupon.
From this judgment and the order overruling the motion for
a new trial appellant appeals.

This cause has been twice before this court. Upon the first
appeal the cause was reversed upon the ground that the trial
court excluded from the evidence a transcript duly certified
as provided by section 886 of the Revised Statutes of the United States, showing the transaction connected with the bid of
Drachman, his failure to comply with the terms of his proposal, the subsequent purchases by the quartermaster's department of hay, and the amounts paid for the same, and
containing copies of Drachman's bid, the bond sued upon,

and the correspondence between the chief quartermaster and Drachman relating thereto. The court held, following the case of *United States* v. *Ellis*, 2 Ariz. 253, 14 Pac. 300, that the transcript, being an account of the war department, came within the provisions of said section 886, and should have been admitted as evidence. *United States* v. *Drachman*, 4 Ariz. 297, 43 Pac. 222. Upon the retrial of the case this transcript was admitted in evidence, over objection, and this ruling is made the basis for one of the appellant's assignments of error.

We have carefully read the statute in the light of *United States* v. *Ellis* and *United States* v. *Drachman*, and see no good reason why these well-considered cases should not be followed. In holding, however, that this transcript was properly admitted in evidence, we do not wish to be considered as deciding that it made a *prima facie* case in favor of the government. The statute reads as follows: "Sec. 886. When suit is brought in any case of delinquency of a revenue officer, or other person accountable for public money, a transcript from the books and proceedings of the treasury department, certified by the register and authenticated under the seal of the department, or when the suit involves the accounts of the war or navy departments, certified by the auditors respectively charged with the examination of those accounts, and authenticated under the seal of the treasury department, shall be admitted as evidence, and the court trying the cause shall be authorized to grant judgment and award execution accordingly. And all copies of bonds, contracts, or other papers relating to, or connected with, the settlement of any account between the United States and an individual, when certified by the register, or such auditor, as the case may be, to be true copies of the originals on file, and authenticated under the seal of the department, may be annexed to such transcript, and shall have an equal validity and be entitled to the same degree of credit which would be due to the original papers, if produced and authenticated in court." We construe the clause, "and the court trying the cause shall be authorized to grant judgment and award execution accordingly," to mean that in a case of this kind, whenever the treasury transcript shows upon its face a breach of a bond given to secure the faithful performance of a contract for delivery of supplies

.to the war department, and further shows a loss to the government resulting therefrom, such a case is made out as will authorize judgment for such loss, if the *prima facie* case thus made be not overcome by competent evidence. But should the transcript fail to show a breach of the bond, or fail to show damages which are the proximate and direct result from said breach, under the terms of the bond, the government, in order to make out a case, must supplement the evidence presented by the transcript by such competent evidence as will entitle the government to a recovery under the well-settled rules of law governing actions of this kind. The transcript in this case shows the following facts: In April, 1885, A. J. McGonigle, chief quartermaster of the department of Arizona, advertised for sealed proposals for furnishing and delivering certain military supplies during the fiscal year ending June 30, 1886, at certain military posts of the United States, among which was Fort Huachuca, in this territory. In accordance with said advertisement, Phillip Drachman, on April 25, 1885, sent to said quartermaster a written proposal to furnish to the government, at Fort Huachuca, 1,800,000 pounds of grama hay at ninety-three cents per one hundred pounds. Accompanying said proposal was a bond executed by said Drachman as principal and said Goldberg and said Dennis as sureties, the condition of which said bond was that ''In case said bidder shall fail to enter into contract within ten days with the proper officer of the United States, and furnish good and sufficient bond for the faithful performance of the same, according to the terms of said bid and advertisement, we and each of us hereby stipulate and guaranty and bind ourselves and each of us, our and each of our heirs, executors, and administrators, to pay to the United States the difference in money between the amount of the bid of the said bidder and the amount for which the proper officer of the United States may contract with another party to furnish said supplies, if the latter amount be in excess of the former for the whole period covered by the proposal.'' This bond was required of bidders under the regulations of the department and under the terms of the advertisement. On May 29, 1885, the said quartermaster notified in writing said Drachman of the acceptance of his proposal. On June 26, 1885, Drachman, by letter, notified the chief quartermaster that he

was unable to comply with his proposal, for the reason that he could not give the requisite bond. The transcript further shows that, after the failure of said Drachman to carry out his contract, the government, during the fiscal year ending. June 30, 1886, purchased, under contract, for use at Fort Huachuca, 840,000 pounds of baled barley hay, 300,000 pounds of loose alfalfa hay, 60,000 pounds of wheat straw, and 400,000 pounds of baled barley straw, at the total cost to the government of $20,868.16. It will be seen that Drachman's contract was to furnish 1,800,000 pounds of grama hay, and the contract of his sureties, as contained in the bond, was, that in case of Drachman's failure to enter into contract within ten days with the proper officer of the United States, and to furnish good and sufficient bond for the faithful performance of the same according to the terms of said bid and advertisement, they would pay to the United States the difference in money between the amount of the bid of said bidder and the amount for which the proper officer of the United States may contract with another party to furnish said supplies, if the latter be in excess of the former, for the whole period covered by the proposal. The proposal was to furnish grama hay. The term ''said supplies,'' as found in the bond, had reference, therefore, necessarily, to the particular kind of hay named in Drachman's bid,—namely, grama hay. The transcript does not show that the contracts for the hay and straw subsequently purchased by the government for use at Fort Huachuca were let upon advertisement, nor does it show that merchantable grama hay was not obtainable by the government, or that any effort was made by the government to obtain grama hay for use at Fort Huachuca. In addition to the treasury transcript, the only evidence introduced by the government was the testimony of Major Mc-Gonigle, the chief quartermaster of the department of Arizona at the time when these transactions occurred. The witness was not able to say with certainty whether the subsequent purchases of hay were made upon advertisement and bids. He was not able to say whether grama hay of suitable quality, and in the quantity desired, was available for use at Fort Huachuca, or whether any efforts were made to procure the same, or whether any offers were made to furnish grama hay by other parties. The defendant offered to prove by

witnesses that an abundance of grama hay was obtainable for use by the government during the time covered by Drachman's proposal. But this offer of proof was denied by the trial court upon objection, and the case went to the jury practically upon the facts as shown by the treasury transcript. Upon the case thus made out the court instructed the jury that "The fact, if it be a fact, that the plaintiff, through its proper officers, purchased alfalfa and barley hay to fill the amount required by the said quartermaster upon the default of the defendants, if you find they did so default, is no defense to this action. That, as a matter of law, under the provisions of the contract or guaranty sued upon, plaintiff could contract for and purchase any kind of hay which would meet the requirements of the said quartermaster and the United States army." The bond in this case primarily fixes the measure of damages for a breach of the contract in the difference in price which the government might pay for the purchase of the supplies proposed by Drachman in his bid, which, as we have seen, was grama hay, and the price named by him in his bid. The instruction of the court ignores this stipulation of the bond, and without qualification the law is stated to be, that the sureties upon the bond are liable for the difference between the price of grama hay as named by Drachman in his bid and the price of any kind of hay which the government might see fit to purchase.

The ordinary measure of damage for the breach of a contract to furnish a particular article is the difference between the contract price and the market value of the same article at the time and place of delivery. This rule is subject to the qualification that when it appears that the particular article contracted for cannot be had, but the buyer is compelled to purchase another article to take the place of the one contracted for, then the measure of damage will be the difference of the contract price of the article agreed to be delivered and the market value of the substituted article. The buyer, however, must show, in order to recover the difference in price between the article contracted for and the substituted article, that the former was not available, and the substitution was therefore made necessary. If, therefore, in this case, it had been shown that grama hay of sufficient quantity and of merchantable quality was available for use at Fort Hua-

chuca, and could have been obtained by the proper officer after the breach of Drachman's contract, and during the time covered by his proposal, then the measure of damage would not be the difference between the price of grama hay as named by Drachman in his bid and the price for other kinds of hay which may have been purchased by the government, but the difference between the price as contracted for and the market value of grama hay during the time covered by the proposal. The question, therefore, as to whether grama hay of suitable quality and sufficient quantity could have been procured to take the place of that contracted for by Drachman, was a question which should have been submitted to the jury; and the ruling of the court in refusing the offer of proof on the part of the defendant and in giving the instruction above set forth was erroneous; and for these reasons the cause will be reversed and a new trial granted.

Davis, J., and Doan, J., concur.